Good afternoon. May it please the Court, I am Keith N. Bibelberg of the law firm of Bibelberg & Martin. On behalf of the plaintiff appellant, if I may respectfully request Judge Fuentes to reserve three minutes rebuttal time. Yes, sir, that's fine. Thank you very kindly. If your honors please, I think Judge Wiginton correctly noted that this case presents an issue of first impression within this circuit. And Judge Wiginton did not explain in her ruling why she did not accord Chevron deference to the rule established by the SEC. Certainly, her honor gave Chevron deference within this case to another aspect of what was before her honor. Yet, without mentioning Chevron deference on the issue of retroactivity, neither accepting it nor rejecting it explicitly, her honor did not deal with Chevron deference. Well, that came out of FINRA, it didn't come out of the, that dealt with something other than in this case. At FINRA that came out of, that's not an SEC matter. The SEC, however, has embraced the FINRA regulation stating that as it pertains to whistleblowers, there will be no retroactive, there will be retroactively a ban on enforcing arbitration. Yeah, but FINRA only applies to non-governmental entities arbitrations dispute. Does it, does it apply as far as, I don't think it applies to this case. So how that regulation, how are you attaching some sort of Chevron deference to something that doesn't apply to the facts of this case? I contend that it does in that Mr. Kazin is a whistleblower within the meaning of the Dodd-Frank section we cited. that in fact, assuming all of the factual inferences set forth in the amended complaint as true, that he reported both to his senior management and thereafter to the SEC. Well, how can we accept that? The document itself says that AAA is to arbitrate this thing, I have nothing to do with FINRA. The document itself says, it really has two separate clauses that conflict with each other, but let me proceed with what your Honor is saying. It doesn't say that AAA is the arbitrating body? It says the American Arbitration Association shall have jurisdiction and what I am respectfully saying to your Honor Judge Cowen is that arbitration is arbitration. And what we have here is the SEC recognizing what I asked the court to recognize, which is that Congress made a determination there is an infirmity in this system that must be corrected with the Dodd-Frank statutory scheme. There were numerous infirmities to be corrected. One of those infirmities was that if a person has the courage to step forward as a whistleblower, it's an infirmity to relegate him to arbitration. If he has an agreement from many years ago, so requiring him to cure that infirmity, you allow him to proceed to a jury trial. You know what I couldn't understand about this? It's easy, naturally, when you sit here as a judge, you're always looking backwards so you can see what should have been done. I understand that. But still, laying aside that issue, I cannot understand how Congress didn't deal with this. It seems so obvious to say, it would have been so easy to say, this shall only apply, you know, hereafter or applies retro. I just can't understand. Your Honor, Judge Greenberg, you make me feel good about myself because when I was preparing for this oral argument, I must have asked myself that question five times. I'm about to argue to you that it is not ambiguous with a straight face. So, therefore, I must concede that it sure could have been clearer than it is. It sure could have been clearer than it is, but I'm not going to say that I concede it is ambiguous. Because to take Judge Greenberg's point, and if I may run with it, Congress was not saying merely, because it didn't say merely, in the future, don't draft employment agreements with mandatory arbitration clauses pertaining to whistleblowers, because if you do that in the future, they will be unenforceable. Congress didn't say that. Congress said no agreement compelling arbitration under the circumstances of a whistleblower under this Dodd-Frank statutory scheme will be enforced. Well, if that's so simple, then we're not too worried about the Chevron deference. Your Honor, it continues to make me feel good about myself because I was thinking about that as well. And what we have here, I submit, is a hybrid. There is not an ambiguity, but Congress minimally failed us by not being quite as clear as it could have been. You're clearly proceeding under Dodd-Frank. You're not proceeding under Sarbanes-Oxley. Is that correct? I think that's a fair statement, Your Honor. You could have proceeded under both, but you chose to proceed under Dodd-Frank. That is what I cited, although I think that it would be fair of me to point out that the intent of Dodd-Frank was to enhance what Sarbanes-Oxley had provided because the infirmities in our system continued to get worse, and we almost fell off the precipice in 2008 and 2009. So I don't view a wide gap between the two. Maybe you can help me just to refine this a little bit because your case is almost entirely under – not almost, it is entirely under Dodd-Frank. And the provision that you rely on plainly says that it restricts only the arbitration of claims presented under this section, meaning Section 1514A of Title 18. Yes, Your Honor. But Title 18 refers to Sarbanes-Oxley. So the anti-arbitration provision doesn't seem to apply to your case. It was, I believe, in the preceding statute to Dodd-Frank, and I submit to Your Honor that it doesn't – You have a statute that explicitly provides anti-arbitration relief in the Dodd-Frank context. I'm not going to say candidly that it was under that provision, Your Honor, but I think that it was the intent of Congress and of the SEC in enforcing that statute. Well, but when you say intent of Congress, certainly they could have said – as well, but they didn't. They explicitly said Title 18, which seems to take you out of the anti-arbitration provision. They've got 2,000 pages within Dodd-Frank that does not always connect the dots. But if you consider the overriding intent here, Your Honor, you've got protection of a whistleblower. A whistleblower must be encouraged to come forward, and I submit to Your Honor, and I think the SEC would agree with me that – And I do not disagree with what you are now saying, but I'm wondering about the relief that you're seeking and whether there is a congressional basis for affording you this relief. Statutory basis, I should say. I submit that there is, and I submit that in the view – and I appreciate what you're saying – in the view of the district court, there is the only question being whether it should be applied retroactively. And – Well, the only question is whether it exists in the first place.  I don't know if there's been a quarrel in this lawsuit as to whether it exists. I don't think that that point was raised. Was it by the appellees in their brief? No, that's what I'm saying. I don't think that there's been a quarrel in this lawsuit that the issue applies to whistleblowers. Under Dodd-Frank, they made a 12B6 motion that was focused on whether Mr. Kazin, the plaintiff, let us assume having been terminated first and having lost the race to the Securities and Exchange Commission, although he went thereafter to them, they raised that issue. But as Your Honor, Judge Greenberg points out, they have never argued that I'm aware of that the ban on mandatory arbitration for whistleblowers does not pertain to a – On page two of the brief, it says, the appeal involves a single straightforward issue, whether the anti-retaliation provisions of Dodd-Frank apply retroactively to poor arbitration between parties to an otherwise valid binding and enforceable arbitration agreement. And that wouldn't include the matter that we've just been discussing. Yes, that is exactly what the appellees have said. Well, they may not be prepared to discuss it. Maybe we can get some feedback from them by way of a letter brief and maybe – I didn't mean to surprise you with this issue. Not at all, Your Honor. I'm happy to consider a letter brief not to exceed five pages within a week. It's not a big issue. It's looking at the statutes. I'd be happy to consider that. But there's also the other idea that we can affirm the district court on any issue that we believe is appropriate. I don't see that we need necessarily to include this issue. Before you sit down, just one second. Yes, Your Honor. Last question. If Chevron would otherwise apply in the current circumstances, how can we use Chevron, which has got to be congressionally delegated authority to put rules in? How can we find that was in this case? When the SEC approval of a rule changed by a private entity, how could that constitute congressionally delegated authority? I think that under the Bowen case, which was cited by my distinguished adversary, there's a difference. And I hope I'm answering your question, Judge Cowen. There's a difference between whether authority was expressly delegated as to retroactivity versus the SEC interpreting something, saying, look, this is what Congress said. If it's not fully clear, then this is what was meant by it. This provision is to apply to any and all agreements out there, because otherwise there'd be no agreement. Well, you're arguing that there was congressional authority delegated to the SEC, even though for the SEC to apply in the Dodd-Frank, even though what you're talking about was the SEC speaking to a private organization. They were speaking to a private organization, but at the same time interpreting the statute and saying what I believe is appropriate and what Judge Greenberg opened the door for me to say, didn't exactly say his honor himself, which is that none of this makes any sense from the standpoint of remedying a problem if you've got millions of workers out there who need to be protected in their capacity as potential whistleblowers. None of this makes any sense if you are saying to them, well, this only applies to future agreements, people. Well, it has nothing to do with any of you million people out there who are hoping to encourage them forward. We're going to have to go on. Yes, Your Honor. Thank you very much. I think it may have to do with upsetting settled expectations in contracting property law. Maybe you can address that later. I will. Thank you, sir. Mr. Tayshoff. Is that correct? That is correct. Thank you. Good afternoon, Your Honors. May it please the Court, my name is Aaron Tayshoff. Barretts and Coleman on behalf of the appellees. At the outset, pursuant to Judge Greenberg's question, I would direct the Court to pages 12 through 14 of the appellee's brief, specifically page 13 in which the appellee specifically addressed, in the paragraph beginning at the bottom of the page, recent decisions that emphasize the distinction between causes of action that are brought pursuant to Sarbanes-Oxley versus causes of action that are brought pursuant to Dodd-Frank and that the Dodd-Frank's retaliatory, anti-retaliatory provisions, and specifically that the prohibition on pre-dispute arbitration applied only to those claims that are brought pursuant to Sarbanes-Oxley. You raised that in your brief? Yes, Your Honor. I'm sorry, I missed the pages. It's the section on pages 12 through 14, but specifically 13. I don't have your brief with me, but I'll get a note of it. Thank you. Despite the lengthy briefing and analysis in this case, one single narrow issue. That starts, though, with a section that says your arbitration provisions of the agreement should be enforced. So sort of inherent in that is that we're discussing the retroactive issue, not retroactivity issue, not the question of this basic question. Well, yes, Your Honor, except that the arbitration provision within the agreement can be enforced if you apply the first analysis with respect to the distinction between claims brought under Sarbanes-Oxley versus claims brought under Dodd-Frank's anti-retaliatory provisions. But it also can be enforced if you take a look at the retroactivity analysis and you take the position that any claims brought under Dodd-Frank, regardless of whether they're ______. Did you take a position in the district court that the entire arbitration provision only applies to Sarbanes-Oxley, not to Dodd-Frank? Yes, Your Honor, that was addressed. You argued that in the district court? Yes. In Judge Wiginton's order, which is being appealed before this court, Judge Wiginton did state that the provisions prohibiting free dispute arbitration applied to all of Dodd-Frank, that she took a position that it's not just Sarbanes-Oxley. But you argued that it was only one way. Correct, and it was included in our briefs that were contemplated with that decision. Go ahead. So the sole issue is whether or not this agreement between the parties can be properly enforced. And it can be enforced, and the decision of Judge Wiginton should be affirmed for five specific reasons. The first is the explicit language of the agreement itself, which holds that even if FINRA is not the proper venue for dispute between the parties, that AAA then is the proper venue. Why doesn't Chevron also apply to Gorman's if it's AAA? Well, Chevron deference applies if a statute is deemed ambiguous. And as Counsel for Appellants stated, the statute's not ambiguous. Specifically, if you look at the first position as far as the distinction between claims that are brought pursuant to Sarbanes-Oxley versus claims that are brought pursuant to Dodd-Frank's anti-retaliation provisions, and even if the statute's ambiguous with regard to temporal scope, the standard that the Supreme Court has repeatedly held is that if a statute's silent with regard to temporal scope, it's deemed non-retroactive, and it simply has a prospective effect. So the first reason would be the explicit language of the agreement. The second, the explicit language of the Dodd-Frank text itself, and strong federal policy in favor of upholding arbitration agreements and not undoing a contract that was freely entered into between the parties for the reasons that it would impair rights that they possessed at the time the contract was signed. You know, I keep reading, and I've read for years about the strong feeling for arbitration. What you keep seeing is people knocking away at what can be arbitrated. You know, I'm not sure everybody agrees with that anymore. I've heard lawyers say they'd rather be in court. They want to be able to appeal. Well, Your Honor, there's no inherent difference or any disadvantage to being, let's say, in AAA versus a federal court to the extent of the relief that can be provided to the claiming party to, you know, still afforded the same mechanisms of discovery and whatnot. And if anything, it can be an efficient and streamlined process to resolve a dispute. Well, most cases say you're not taking anything away by taking arbitration. You're just changing the form. You know, the form is not taking anything away. Well, what's being taken away would be the substantive rights of the party. Well, substantively, no rights are being taken away. We're just changing from an arbitration to a court proceeding. But any rights you have are still maintained. Well, as the Supreme Court held, for example, in AT&T Mobility v. Concepcion, arbitration rights are akin to any contractual rights. And if parties freely enter into a contract that contains an arbitration provision, it's to be upheld to the fullest extent possible. Well, what I think Judge Callan meant is this, the substance of what is actionable is the same whether it's in a court or before AAA. What's affected here is how the matter is enforced, how it's adjudicated, that's all. So suppose Congress, you know, reorganized the court system. You wouldn't have the same court. You'd have a different court, you know. Now, I realize this is bigger than just changing the courts. I understand that. But, I mean, that's the point of it. I mean, it's not a bad argument. Well, except that undoing a contract that was, again, freely entered into by both parties with the reliance and expectation that that contract would be upheld and enforced for its entire duration. But the case has suggested that policy only applies to the substance. If they made something actionable that wasn't, that would be a different issue. Well, there are a plethora of cases on this specific issue that have ruled that undoing an arbitration agreement between the parties with respect to an analysis of Don Frank's provisions would substantively impair the parties and deprive them of rights they obtained at the time they contracted. I wish we could have the attorneys for the committee that drew this law and asked them why they didn't deal expressly with this issue. It seems, again, I understand retroact. Looking back from here, it looks obvious. But this one really does look obvious even from looking forward. Well, respectfully, Your Honor, I do think if you take a careful look at the text of the Dodd-Frank Act, it is explicit as far as which specific amendments that Dodd-Frank listed have a or inserted a prohibition on pre-dispute arbitration. Prohibition on what? On pre-dispute arbitration provisions. And as Judge Fuentes mentioned earlier, the Dodd-Frank Act specifically states the exact acts that were enacted before that are then given this pre-dispute. You know what, I can't understand it. I would have thought there would be a barrel of cases on this point by this time. It would seem that there's a lot of claims and it's a big country. There are just a few cases that deal with it. Are we wrong? Are there a lot? Your Honor, at least based on the research that the parties have done in this case, there are only approximately 12, 13 cases that have dealt with this issue specifically. Two have held in favor of the appellant. However, the overwhelming majority, including the Fourth Circuit and Fifth Circuit have held that the statute is not to be applied retroactively with respect to the pre-dispute arbitration provisions. So your position is that there is a prohibition against pre-dispute arbitration in Dodd-Frank? Only as it specifically applies to the sections that Dodd-Frank intended to amend. What sections are those? One of them being the cause of action that arises under Sovereign Zoxley. Another being a cause of action that arises. I'm trying to determine whether the case, this particular case, is under, well, it's admitted that it's a Dodd-Frank case. So the anti-arbitration provision would not apply in this case if we accept that view. Exactly, Your Honor. Now, why would Congress, you probably don't know why Congress does what Congress does, but it's kind of odd that in the same provision it would single out Sovereign Zoxley but not include it in Dodd-Frank. Correct, Your Honor. I can't speak for why Congress does what Congress does. Your argument is that according to Justice Scalia's latest book, if they said it in one thing but didn't say it in another, they meant that the status quo would continue. Exactly, Your Honor. And there was a prolonged period of comment and review where Congress did entertain potential amendments and this issue as far as, I guess, definitively stating that it did, that the prohibition on pre-dispute arbitration did not apply to Dodd-Frank retaliation protections, that was never addressed and people didn't raise that as a potential amendment and, therefore, it wasn't. Are you acquainted with the Penza and the Wong case that are both cited? Correct. Yeah. Well, they establish at same length that arbitration does not impair a party's substantive rights. Yes, Your Honor. And they're strong cases. Which can be distinguished fairly easily. The first and most important distinguishing factor is that both cases involved plaintiffs who brought claims under Sovereign Zoxley. They did not involve claims that were brought under Dodd-Frank. And if you take the position that it is Sovereign Zoxley that prohibits pre-dispute arbitration provisions and not the sections of Dodd-Frank involving anti-retaliation, then there's a juxtaposition between the two. That's true. But the cases write broadly. They do not narrow it out to Sovereign Zoxley or anything else. Well, the Murray case, the Southern District decided in January 2014, does make that exact distinction. It does, which was also the court that held the Wong case two years earlier, does make the distinction that specifically Dodd-Frank anti-retaliatory claims are to be arbitrated. There is no prohibition on a pre-dispute arbitration agreement in those specific contexts. Does it matter that the retaliation took place years after Dodd-Frank was passed? I mean, wasn't TD on notice that it might have to arbitrate this case? It shouldn't matter because the agreement specifically provides that when there's a dispute between the parties, it's to be arbitrated either in FINRA or AAA, and that agreement spanned the entire tenure of the appellant's employment with the company. And to the extent that it occurred on a specific date doesn't factor into the analysis of whether that agreement should be upheld and enforced to the fullest extent. You know, when I read that section, I thought to myself, unless I'm wrong, these agreements were in very large use. And there are lots and lots of them. I think some reference was made to that. Probably tens of thousands outstanding. And Congress must have known that. And I wondered, well, maybe Congress just assumed that this was just outlawing those agreements. I mean, they were there already. You're saying that's not true. Or Congress could have been taking the prospective approach and saying that starting on the – in fact, this text of the statute itself, Section 4 of the Dodd-Frank Act, said – Well, what I meant was this, that there were so many of them that the question of dealing with all these agreements that were there, and there had been a lot of litigation about it, would have – that Congress must have been aware of what was going on and was thinking about all these agreements, you know, in the political dealings in Washington. Yes. Yes. However, the text of Section 4 of the Dodd-Frank Act states that to the extent that it's not expressly provided, any of the provisions within the Act are to take effect one day after its enactment. And this can be read as Congress's intent to take a prospective approach, and that to the extent there were agreements that were out there predating this Act, they are to be fully enforced. And going forward, agreements that are entered into after July 2010 can be amended and reformed so as to provide for that carve-out. What's your response to your adversary's attempt to distinguish St. Cyr from your case? Yeah, well, regardless of – I mean, this is – what's the difference between immigration or whatever? It's a – the concept is the same regardless of the course of action. Correct, Your Honor. It's the concept that the Supreme Court has continually upheld as far as when there is a question as to the temporal scope of a statute. The Court does not look to agency interpretation or other outside interpretation. If a statute is either silent or ambiguous as to its temporal scope, it's deemed non-retroactive, and the inquiry ends there. Do you feel that your adversary's best position is under 1514A? Is that – do you feel as if that's the biggest hurdle you have to overcome? Well, Your Honor, had the appellant initially brought a claim under 1514A and specified in his complaint that he was making a Sarbanes-Oxley anti-retaliation cause of action, but he – which after first having exhausted the administrative remedies of going to OSHA and whatnot, then there would be a much different conversation. You'd have to arbitrate that case. I'm sorry? You would have to – no, you wouldn't arbitrate that case. Well, exactly.  His position is that this carries over to Dodd-Frank, not just Sarbanes-Oxley. Well, exactly. So – and even if it does carry over, and as Judge Wiginton stated in her order, that you take the position that any cause of action brought under Dodd-Frank or pursuant to Dodd-Frank is entitled to that prohibition, we would take the same position as far as the anti-retroactivity, that the act is to be given a prospective effect, and any agreements that are entered into prior to the act's enactment are to be upheld. On what is the basis of any prohibition, any cause of action brought under Dodd-Frank is entitled to the anti-arbitration provision. Did she base that on anything in Dodd-Frank itself? No. I'm sorry, that the Dodd-Frank prohibition – I thought you had said that – Judge Wiginton said that any cause of action brought under Dodd-Frank is entitled to the anti-arbitration provision. Judge – I can clarify. Judge Wiginton simply stated that the prohibition of pre-dispute arbitration affects all of Dodd-Frank. She did read in the amendments to 1514A into the entirety of Dodd-Frank. But our argument would be even if you take that position, the argument against the retroactive implication and implementation of Dodd-Frank precludes any – precludes the unwinding of the agreement. Thank you, Mr. Tishok, very much. Mr. Biebelberg. Thank you again, Your Honors. I want to offer one point in reply and following up on what Judge Cowan and Judge Greenberg had said. The argument is made by the appellee that this is a substantive right because it's in a contract. So I think that to extend that reasoning, they are saying that they are being deprived of a substantive right if a jury trial is given to both litigants. And I happen to disagree. I don't think that logically one could castigate a jury trial in that manner. Therefore, it must be a procedural issue, a choice of forum issue. And I wonder if Your Honors, please, where Congress has made this law, this subsection, banning mandatory arbitration clauses in the case of a whistleblower because of an infirmity in the system. Does that infirmity, the finding of that infirmity, shed light on whether this is a substantive right? How can you proclaim you've got a substantive right at this point in time when Congress has said there is a serious problem in our system? The economy almost went to the brink. And one way to remedy that terrible infirmity is to allow plaintiffs who are whistleblowers to have the right to a jury trial or to have the right to a court hearing in any event, not to limit such a plaintiff to arbitration. We heard from Mr. Tashoff, and I don't want to overly emphasize his words, but I wrote them down anyway. There is no inherent difference, he said. You have rights in arbitration and remedies. You have rights in a courtroom and remedies. He says there is no inherent difference. Is he not, therefore, supporting my contention that what we're talking about is procedural and choice of forum, not substance? Because if this is substance, then we're drawing a bright line that says, look, if something's in a contract, it must be substantive. The court shouldn't even do an analysis. And I don't think that that is the direction one ought to travel in. In theory, you should get the same result. Like if a case is transferred from one venue to another in a district court, you should get the same result. But that's not why people move to change venue, to get the same result. They think there's going to be a different result. Your Honor is 100% correct, and I know my time is up. I would just add to that by saying, and in this instance, when one's right to a trial by jury is impacted, I hardly think it's a deprivation of an adversary's substantive right. You prefer the jury, I can. I do that. That's because you think there will be a different result. Thank you, Mr. Dean. Thank you. It's a privilege to be here. Thank you all for your arguments. We'll take the case under advisement. The court will adjourn.